IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTINEZ FRANKLIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 19-CV-04375 |
| HARVEY CITY DETECTIVE RASHEED ASKEW STAR #944, DET. JOSE GOMEZ STAR #1010, and CITY OF HARVEY, a Municipal Corporation, Defendants. | ) ) Judge John J. Tharp, Jr. ) ) ) ) ) ) |

## MEMORANDUM OPINION AND ORDER

After the dismissal of his indictment for attempted murder, Martinez Franklin sued the City of Harvey and two Harvey detectives for constitutional violations, including unlawful detention, false arrest, and malicious prosecution, under 42 U.S.C. § 1983. The defendants moved for summary judgment. Based on the undisputed material facts, probable cause justified Martinez[1]'s detention and prosecution: the victims of a drive-by shooting—reasonably credible witnesses—identified Martinez and his brother as the perpetrators. Bullet holes that peppered the witnesses' car, but not the van that Martinez was driving, bolstered the witnesses' accounts and undermined Martinez's claim that he and his brother were the real victims. Because Martinez has not identified anything in the record to rebut the facts supporting probable cause, the Court grants defendants' motion for summary judgment.

---

[1] The Court refers to Martinez Franklin and his brother, Marlon Franklin, by their first names to avoid confusion.

# BACKGROUND

The Court draws the relevant background from defendants' statement of material facts, filed pursuant to Local Rule 56.1. Martinez has admitted all of the facts that the defendants have submitted to the Court. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Therefore, except where otherwise noted, the Court relies on the defendants' statement of material facts to determine whether summary judgment is proper.

On the afternoon of December 2, 2016, Sergeant Shane Gordan[2] of the Harvey Police Department pulled over a gray Mitsubishi for speeding. Five men—Donnell Martin, Jaquon Doby, Lamari Battle, Jeremiah Dixon, and Shamar McGhee—were in the car. Martin, the driver, explained to Gordan that a maroon van had shot at the passengers of the Mitsubishi at the intersection of 154th Place and Robey and that he was speeding to Ingalls Hospital because McGhee had been shot in the abdomen. Gordan then followed the Mitsubishi to Ingalls Hospital.

When Gordan and the passengers arrived at the hospital, McGhee was taken inside to receive treatment. Gordan and the Mitsubishi parked, and Gordan interviewed the four remaining passengers. As the Mitsubishi passengers were describing what happened, a maroon van pulled up next to the Mitsubishi. The passengers in the Mitsubishi identified the maroon van as the vehicle from which the shots had been fired.

The plaintiff, Martinez Franklin, was driving the maroon van, and his brother, Marlon Franklin, was in the front passenger seat. Marlon had been shot in his right hand, so Martinez got

---

[2] Although the defendants' Local Rule 56.1 statement spells the Sergeant's last name as "Gordon," the underlying affidavit, which the Sergeant signed, spells it "Gordan."

2

out of the van and took him to the emergency department. As Martinez was leaving the hospital, a Harvey police officer arrested him and transported him to the Harvey Police Department. The police also took the four uninjured Mitsubishi passengers to the Harvey Police Department for questioning. At the police station, one of those passengers, Lamari Battle, identified Martinez in a photo lineup as the driver of the maroon van.

Meanwhile, Detective Rasheed Askew, a defendant in this case, was called to the scene of the shooting, 154th Place and Robey. Askew reviewed the crime scene area and collected five spent .45-caliber shell casings as evidence. When Askew went back to the Harvey Police Department, another police officer informed him that Martinez had been arrested at Ingalls Hospital.

At the Harvey Police Department, police interviewed Martinez and Marlon, as well as the passengers of the Mitsubishi. The police recorded the interviews with Martinez and Marlon. According to Martinez, he was driving the maroon van with the windows down and Marlon in the front seat when a gray car pulled up quickly behind them. During the interview, Martinez explained that when he pulled over to his left to let the gray car pass, the occupants of that car began shooting at him and his brother at 154th Place and Robey. After Marlon was shot in the hand, Martinez drove to Ingalls Hospital. Martinez could not identify who fired the shots at his brother and him or explain why and how the shooting occurred. He also failed to explain why the Mitsubishi was riddled with bullet holes when it arrived at Ingalls Hospital while the maroon van—the putative target of the shots, according to Martinez, remained unscathed.

Based on this information and because he lacked authority to initiate felony charges, Askew requested that the Assistant State's Attorney, Erika Hamer, review the evidence. Hamer conducted her own investigation and independently interviewed the witnesses in the case,

3

including Martinez. At that point, another Mitsubishi passenger, Donnell Martin, identified Martinez as the driver of the maroon van that shot at the Mitsubishi and Marlon as the shooter.

Without input or influence from Askew, Hamer decided to charge Martinez for attempted murder. A grand jury indicted Martinez. After an Illinois state court found that Askew made a material misrepresentation of evidence to the grand jury, however, the court dismissed the indictment. According to Martinez's sole submission of material fact—which the defendants dispute—Askew received a letter from the Chief Deputy State's Attorney, informing Askew that the State's Attorney must disclose Askew's misleading grand jury testimony transcript should Askew testify again. Martinez asserts—and Askew again disputes—that Askew resigned about a month after receiving that letter.

In June 2019, Martinez sued the City of Harvey, Askew, and another detective, Jose Gomez, for violations of his constitutional rights. According to the complaint only (and crucially, nowhere in any of plaintiff's summary judgment filings), Askew lied during grand jury proceedings. The Complaint alleges that Askew falsely told the grand jury that Martinez and Marlon "wouldn't say" how Marlon "g[ot] the bullet hole in his hand." Compl. ¶ 27, ECF 1. Allegedly, Marlon had told officers that he injured his hand because someone with dreadlocks shot at him from a gray car and that he threw up his hands to shield himself. The complaint also alleges that Askew materially misrepresented a fact to the grand jury by testifying that a spent .9 caliber shell casing was found on the floor of the maroon van, while failing to inform the grand jury that he had found spent .45 caliber shell casings at the scene.

According to Martinez's allegations, after Martinez filed a motion to dismiss the indictment, the State's Attorney's Office recognized the problems with Askew's testimony and

4

sought to re-indict Martinez. Detective Gomez testified before the grand jury and Martinez was reindicted. The state court then granted Martinez's motion to dismiss.

Martinez sued the defendants; his complaint sets forth five counts: fourth amendment unreasonable detention under 42 U.S.C. § 1983 (Count I); federal malicious prosecution and fourteenth amendment due process (Count II); respondeat superior (Count III); indemnification pursuant to 745 ILCS 10/9-102 (Count IV); and state-law malicious prosecution (Count V). Defendants now move for summary judgment.

## DISCUSSION

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party has the ultimate burden of persuasion at trial, the moving party's initial burden is "not onerous." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). All that the moving party must do is point out to the district court that no evidence supports the plaintiff's claim. *Id.*; *see also Celotex*, 477 U.S. at 323. Defendants discharged their burden by filing a statement setting forth the undisputed material facts pursuant to Local Rule 56.1 and showing that Martinez's claims fail under those facts.

The burden then "shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *See Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012). To satisfy this burden, the non-moving party must "identify[] specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The Court must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). As explained below, by failing to identify anything in the record to raise a genuine dispute of fact, Martinez has not satisfied his burden.

I.    **Fourth Amendment Unreasonable Detention Claim**

Martinez first alleges that the defendant officers seized and detained him without probable cause in violation of the Fourth Amendment. Defendants argue that they cannot be liable for any Fourth Amendment violations because they did not participate in Martinez's arrest. Only an individual who personally participates in a constitutional deprivation is subject to liability under § 1983. *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). That participation need not be direct. For example, an officer may still face liability for false arrest even without "personally plac[ing] the handcuffs on an arrestee" if that officer "undert[ook] some action prior to, or perhaps at the time of" the allegedly wrongful arrest. *Chagolla v. City of Chicago*, No. 07 C 4557, 2012 WL 403920, at *4 (N.D. Ill. Feb. 8, 2012) (quoting *Jenkins*, 147 F.3d at 583-84). Nevertheless, some action on the part of the officer must precipitate the constitutional violation to warrant § 1983 liability. *See, e.g.*, *id.* (denying summary judgment to officer who participated in officer group huddle prior to plaintiff's unlawful arrest); *Perkins v. O'Shaughnessy*, No. 10 C 5574, 2014 WL 902685, at *5 (N.D. Ill. Mar. 7, 2014) (denying summary judgment to officer who was involved in investigation that led to plaintiff's arrest based on false information).

As an initial matter, Martinez points to absolutely nothing in the record to support defendant Gomez's direct or indirect involvement in any constitutional deprivation. In fact, neither Martinez's response to the motion for summary judgment nor his response to the defendants' Rule 56.1 statement mentions Gomez at all. Without any evidence that Gomez was at all involved in this case and in light of Martinez's failure to develop any argument as to Gomez, the Court dismisses all of Martinez's claims against him. *See Gross v. Town of Cicero*, 619 F.3d 697, 705 (7th Cir. 2010) (declining to address perfunctory and undeveloped arguments).

6

The Court further agrees that Martinez has presented no evidence that Detective Askew was involved in the initial decision to arrest Martinez. Indeed, Martinez admits that Askew only learned of Martinez's arrest from another officer when he arrived at the police station after visiting the scene of the shooting. Askew therefore could not have "undertaken some action prior to, or perhaps at the time of" the arrest to be subject to liability. *Chagolla*, 2012 WL 403920, at *4. To the extent that Martinez asserts a false arrest claim against Askew, it cannot proceed.

That does not end the Court's inquiry, however, because Martinez's unlawful seizure and detention claim fairly encompasses more than his wrongful arrest without probable cause. Continuing to detain a suspect violates the Fourth Amendment when post-arrest investigation dissipates probable cause. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986); *accord Hull v. City of Chicago*, No. 13 C 1563, 2014 WL 5024141, at *4 (N.D. Ill. Oct. 7, 2014). Moreover, the Supreme Court has made clear that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet*, 580 U.S. 357, 137 S. Ct. 911, 920 (2017). Count I of Martinez's complaint alleges "unreasonable detention," and that defendants "arrested and charged" Martinez, "causing him to be imprisoned" despite having "no probable cause to arrest Plaintiff and initiate and/or pursue criminal charges against him." Compl. ¶¶ 48-49, ECF No. 1. Martinez's complaint encompasses not only wrongful arrest but also wrongful detention and pursuit of charges without probable cause, a claim that supports a federal malicious prosecution theory. *See Thompson v. Clark,* 142 S. Ct. 1332, 1337 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause.")[3]

---

[3] On remand from the Supreme Court's decision in *Manuel v. City of Joliet*, 580 U.S. 357, 137 S. Ct. 911, 920 (2017), the Seventh Circuit interpreted that opinion as holding that "Fourth Amendment malicious prosecution' is the wrong characterization" and that the only viable Fourth

Certainly, Askew was involved in investigating the basis for charges brought against Martinez. According to the undisputed facts, Askew interviewed Martinez and Marlon as well as the four men in the Mitsubishi and requested felony review from the Assistant State's Attorney. That is enough to at least constitute "involvement" in Martinez's continuing detention and decision to pursue charges against him. *See Perkins*, 2014 WL 902685, at *5. But an officer's involvement in a person's detention or prosecution alone does not subject him to § 1983 liability. Probable cause is an absolute defense to a Fourth Amendment unlawful detention claim, whether it is for wrongful arrest, false imprisonment, or malicious prosecution. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). To survive summary judgment, Martinez must raise a genuine dispute of material fact to support the absence of probable cause. *See Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001) (burden is on nonmoving party to show absence of probable cause).

The undisputed facts show that probable cause supported Martinez's detention and prosecution, and Martinez cites to nothing in the record to convince the Court otherwise. "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021) (*quoting Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010)). When facts supporting probable cause are not in dispute, the Court determines whether probable cause exists. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).

---

Amendment claim is the absence of probable cause to justify detention. *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018). Recently, however, the Supreme Court in *Thompson v. Clark* recognized Fourth Amendment claims under § 1983 for malicious prosecution. 142 S. Ct. at 1337. Whatever the characterization of Martinez's claim, Martinez must prove that officers lacked probable cause to detain him or press charges against him.

Martinez does not dispute that, before requesting felony review from Assistant State's Attorney Hamer, Askew considered that (1) the men in the Mitsubishi provided a detailed explanation about the circumstances of the shooting, the identity of the shooters, and a description of the van in which the shooters were driving; (2) just a few minutes after obtaining this report, Martinez and Marlon pulled up in a van matching that description and which the men in the Mitsubishi identified as the van driven by the shooters; (3) though Martinez and Marlon claimed they had been shot at, neither identified who shot at them; (4) there were bullet holes in the Mitsubishi, no bullet holes in the van that Martinez was driving, and five shell casings of the same caliber at the intersection where the shooting occurred; and (5) Lamari Battle identified Martinez as the driver of the car that shot at the passengers in the Mitsubishi from a photo lineup. From this information, a reasonable officer in Askew's position could believe that Martinez committed attempted murder. *See Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019) (holding that even questionable witness identification supported probable cause determination); *Allen v. City of Des Plaines*, 262 F. Supp. 3d 727, 732 (N.D. Ill. 2017) (finding that witness's statement and corroborating physical evidence justified officers' conclusion that probable cause existed). With Donnell Martin's additional identification of Martinez as the driver of the van and Marlon as the shooter, there is no question that the state had probable cause to charge Martinez with attempted murder.[4]

---

[4] That is so notwithstanding that Marlon was shot in the hand. It is undisputed that multiple shots were fired at and hit the Mitsubishi and that the van was not hit by gunfire; it had no bullet holes. Even if one of the Mitsubishi passengers fired a single shot, hitting Marlon, it would not be unreasonable for an officer to infer that the instigator of this incident was more likely than not the vehicle that launched a barrage of gunfire rather than the vehicle from which a single shot was fired.

Despite admitting all of defendants' facts and presenting no relevant facts of his own, Martinez attempts to manufacture a factual disagreement. He argues that the two competing versions of events that he, his brother, and the Mitsubishi passengers recounted present a genuine dispute of material fact. That argument misapprehends the relevant inquiry. It may be true that the parties dispute the facts surrounding the shooting, but the question of whether probable cause justified Martinez's continued detention and charge is distinct from the question of what happened on the afternoon of December 2. Even if a genuine dispute of fact remains regarding the latter question—indeed, even if it were undisputed that Martinez is innocent of attempted murder—Askew would still prevail if probable cause existed to detain and charge Martinez. *See Mustafa*, 442 F.3d at 548 ("The existence of probable cause does not depend on the actual truth of the complaint."). The probable cause inquiry focuses on what a reasonable officer in Askew's position would have done with the facts known to Askew at the time, not what actually happened. *See Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007). And the undisputed facts known to Askew at the time established probable cause.

Martinez's argument that this Court should not evaluate the credibility of the witnesses who told Askew that the Franklins shot at them fails for the same reason. The Seventh Circuit has repeatedly held that an officer may rely on a reasonably credible witness when evaluating probable cause. *See Reynolds*, 488 F.3d at 765 (collecting cases). That is what Askew did here in relying on the Mitsubishi passengers' detailed description of events, which was corroborated by physical evidence: the bullet holes in their car (and their absence in the maroon van). Given that the passengers' portrayal was reasonably believable, Askew had no further duty to validate their accounts. *Beauchamp v. City of Noblesville,* 320 F.3d 733, 743 (7th Cir. 2003). Even though, as Martinez points out, Askew's subjective evaluation of the passengers' credibility is irrelevant to

the probable cause inquiry, *Whren v. United States*, 517 U.S. 806, 813 (1996), the objective reasonableness of Askew's credibility evaluation is relevant.

Of course, an officer cannot ignore other facts that would invalidate probable cause. *See Fox v. Hayes*, 600 F.3d 819, 834-35 (7th Cir. 2010); *Beauchamp,* 320 F.3d at 743. Martinez is free to challenge the reasonableness of Askew's credibility determination by pointing to facts that cast doubt upon it. But Martinez does not provide or cite to any evidence at all, much less any evidence that supports a contrary version of events or renders Askew's assessment of the relative credibility of the participants objectively unreasonable. In his response brief, Martinez argues that his "version of events must carry the day." Pl.'s Resp. Br. at 10, ECF No. 54. Again, Martinez's version of events does not determine the existence of probable cause; the relevant facts are not what happened during the shooting but what information police had about the shooting when they arrested Martinez. Martinez does not dispute what information Askew collected in his investigation, nor does he cite to anything in the record to call into question the reliability of that information. *See* Fed. R. Civ. P. 56(c)(1)(A). Without pointing to evidence in the record that creates a genuine dispute about what information Askew knew, Martinez merely declares that a fact dispute exists because Askew had to assess the credibility of witnesses who told different tales. That is not enough to defeat summary judgment. As the Seventh Circuit has explained, "[p]olice officers are constantly faced with reluctant witnesses," but they are "not required to use the rules for summary judgment and draw inferences in favor of the suspects. Where a reasonable person would have a sound reason to believe the suspect committed a crime, the police may arrest and allow the criminal justice system to determine guilt or innocence." *Coleman*, 925 F.3d at 351 (cleaned up).

11

Finally, Askew has raised a qualified immunity defense, which means that he prevails if there was at least an "arguable" basis for a probable-cause finding. *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015). In other words, an officer is entitled to qualified immunity if "a reasonable officer could have mistakenly believed that probable cause existed." *Id.* (quoting *Fleming v. Livingston County*, 674 F.3d 874, 875, 880 (7th Cir. 2012)). Even if Askew were mistaken that Battles's positive identification of Martinez, the detailed accounts of the Mitsubishi passengers, and the bullet holes in the Mitsubishi supplied him with probable cause, the existence of probable cause was at least arguable. *See Jenkins,* 147 F.3d at 585 (holding officers are entitled to qualified immunity if a reasonably credible witness informs police that a crime occurred, and the officers are later mistaken). Askew's belief in probable cause was especially reasonable given that—as Martinez admits—Assistant State's Attorney Hamer independently decided to charge Martinez with attempted murder without relying on Askew's assessment. *See Burritt*, 807 F.3d at 251 (finding officer's belief reasonable when prosecutor independently determined that probable cause existed). Because the undisputed facts show that probable cause supported Martinez's detention and prosecution and Martinez has not cited to any facts supporting a contrary result, the Court grants summary judgment on Count I.[5]

---

[5] Defendants also argue that Martinez's claim is time-barred under the relevant statute of limitations governing § 1983 claims. The parties dispute when Martinez's claim accrued, and consequently whether his claim is timely. The Supreme Court's holding in *Thompson*, decided after briefing in this case, muddied these waters. After *Thompson* recognized the existence of malicious-prosecution claims grounded in the Fourth Amendment, 142 S. Ct. at 1337, the Seventh Circuit held that a malicious prosecution claim grounded in the Fourth Amendment accrues when the underlying prosecution is terminated, *Smith v. City of Chicago*, No. 19-2725, 2022 WL 2752603, at *1 (7th Cir. July 14, 2022). The parties have not submitted any supplemental briefing regarding the effects of those legal developments. Without input from the parties, the Court declines to take up the statute-of-limitations issue. Assuming, without deciding, that Martinez's claim was timely, it still fails because of the reasons stated in the preceding section.

## II. Fourteenth Amendment Malicious Prosecution Claim

Count II asserts a "Federal Malicious Prosecution and Fourteenth Amendment due process claim." Compl. at 8, ECF No. 1. In this count, Martinez alleges that the defendant officers "made false allegations" against Martinez in police reports, criminal complaints, and during testimony, causing Martinez's detention and malicious prosecution. *Id.* ¶¶ 53-57. Characterizing the law as it stood at the time of briefing, the defendants argued that this claim must fail because "[t]here is no claim for malicious prosecution under federal law." Memo in Supp. S. J. at 10, ECF No. 50. Any claims regarding pre-trial seizure, defendants argued, are Fourth Amendment, rather than Fourteenth Amendment claims. And under Seventh Circuit precedent, according to defendants, there is no right not to be prosecuted without probable cause under the Fourteenth Amendment. *See Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014); *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013) ("There is no such thing as a constitutional right not to be prosecuted without probable cause.").

With the Supreme Court's recent decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), the legal landscape surrounding federal malicious prosecution claims has changed somewhat, but not enough to rescue Martinez's claim. In *Thompson*, the Supreme Court recognized the existence of a Fourth Amendment malicious prosecution claim, overruling contrary Seventh Circuit precedent, *id.* at 1337, but declined to comment on the existence of a malicious prosecution claim grounded in the Fourteenth Amendment's Due Process Clause, *id.* at 1337 n.2. As other courts in this district have explained, however, *Thompson* did not overrule Seventh Circuit precedent holding that a plaintiff subject to a prosecution under Illinois law cannot bring a Fourteenth Amendment malicious prosecution claim (because Illinois law permits malicious prosecution claims; *see Ray v. City of Chicago,* 629 F.3d 660, 664 (7th Cir. 2011)). *See, e.g., Sneed v. Vill. of*

13

*Lynwood*, No. 22-CV-00266, 2022 WL 5116464, at *3 (N.D. Ill. Oct. 4, 2022); *Navarro v. City of Aurora*, No. 21 C 6288, 2022 WL 1988990, at *2 (N.D. Ill. June 6, 2022).

The upshot is that Martinez may bring a Fourth Amendment malicious prosecution claim to challenge a seizure without probable cause but may not bring a Fourteenth Amendment malicious prosecution claim to challenge a denial of his liberty without due process. As explained in the previous section, the existence of probable cause defeats any Fourth Amendment malicious prosecution claim that Martinez brings. *Mustafa*, 442 F.3d at 547. This is so even accepting as true Martinez's claims that Askew lied to the grand jury; there was already probable cause to prosecute Martinez. Even if Martinez had presented evidence to show that Askew's alleged misrepresentations influenced a grand jury to indict him—and to be clear, Martinez did not adduce any such evidence—the independent existence of probable cause defeats any Fourth Amendment malicious prosecution claim. *See Wade v. Collier*, 783 F.3d 1081, 1087 (7th Cir. 2015) (holding that "[p]robable cause is a complete bar to a malicious prosecution claim," notwithstanding argument that grand jury indictment was based on false information).

Martinez, moreover, does not respond to defendants' argument that a Fourteenth Amendment malicious prosecution claim is not viable in this circuit. In fact, Martinez does not attempt to defend his Fourteenth Amendment theory at all in his response brief. A party who fails to address an argument in response to a summary-judgment motion forfeits the issue. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (collecting cases). Having abandoned his claim and faced with unfavorable precedent, Martinez cannot prevail on his second count.[6]

---

[6] Because Martinez has not provided a basis for holding Askew liable for his allegedly false statements to the grand jury, the Court need not address his argument that he is absolutely immune from any lawsuit based on grand-jury testimony.

### III. State Law Claims

Martinez's remaining claims—respondeat superior, indemnification, and state law malicious prosecution—are based in Illinois state law.[7] Having dismissed all of Martinez's claims to the extent that they arise from federal law, the Court has the discretion not to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3). That said, however, the Court finds it appropriate to adjudicate those claims as well. Given that the events at issue in this case occurred some six years ago, that the plaintiff has requested this Court to retain jurisdiction and to adjudicate this motion as to the state law claims, and because resolution of those claims is straightforward and does not raise any novel or complex issue of state law, the Court will address the state law claims on the merits.

In view of the Court's rulings on the unlawful seizure and detention claim and the malicious prosecution claim, each of the remaining state law claims fails. Notwithstanding that Illinois recognizes malicious prosecution as a viable legal claim, it fails here because, as noted above, probable cause supported Martinez's prosecution. *See Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021).

As for the respondeat superior and indemnification claims, both necessarily fail because no claim against either of the individual defendants has survived. *See id.*, 987 F.3d at 646. Having no viable claim against either of the individual defendants, there can be no derivative liability as

---

[7] The Court construes Martinez's respondeat superior claim as arising under state, rather than federal law. Compl. ¶ 62, ECF No. 1 ("City of Harvey is liable for the acts of its agents and employees and is therefore liable for malicious prosecution ***and any other state law claim*** that arises out of the incident that is the subject of this complaint." (emphasis added)). To avoid any doubt, however, the Court notes that a municipality cannot be vicariously liable for the constitutional torts of its employees or agents under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). To the extent that Count III hinges upon any federal claims, summary judgment is granted to the City.

to the City of Harvey under a theory of respondeat superior and there will be no adverse judgment against which the city must indemnify the defendants.

\*   \*   \*

In responding to the defendants' motion, Martinez has failed to meet his burden on summary judgment. By failing to identify any evidence at all, much less evidence sufficient to support a genuine dispute of material fact to support his claims, Martinez has not identified any questions that a jury should resolve. Accordingly, the defendants are entitled to judgment as a matter of law; a trial is unwarranted.

Dated: November 21, 2022

John J. Tharp, Jr.
United States District Judge